UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL FAMILY PLANNING AND REPRODUCTIVE HEALTH ASSOCIATION, INC., <br>                Plaintiff, <br><br> v. <br><br> ALBERTO GONZALES, et al., <br>                Defendants <br>                and <br> CHRISTIAN MEDICAL ASSOCIATION AND THE AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS <br>                Defendant Intervenors | Civil Action 04-02148 (HHK) |

**MEMORANDUM OPINION**

Plaintiff, National Family Planning and Reproductive Health Association ("NFPRHA"), brings suit on behalf of its members against four defendants in their official capacities: former Attorney General John Ashcroft, former Secretary of Health and Human Services Tommy Thompson, Secretary of Labor Elaine Chao, and former Secretary of Education Rod Paige.[1] NFPRHA asserts that an amendment to Congress's 2005 appropriations act which attaches certain conditions to the disbursement of federal grant funds, commonly referred to as the "Weldon Amendment," is constitutionally infirm and therefore should be enjoined from taking effect. Presently before the court is NFPRHA's motion for a preliminary injunction [# 4], the

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), the court substitutes Alberto Gonzales for defendant Ashcroft, Michael Leavitt for defendant Thompson, and Margaret Spellings for defendant Paige.

resolution of which has been consolidated with a resolution of the merits of this action.[2] Upon consideration of the motion, the oppositions thereto, the arguments of counsel at a hearing, and the record of this case, the court concludes that the motion must be denied and judgment entered in favor of defendants.

## I. BACKGROUND

On November 20, 2004, Congress passed the Consolidated Appropriations Act, 2005, P.L. 104-447 (H.R. 4818), which included the Department of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2005. Attached to the Consolidated Appropriations Act was an amendment, sponsored by Congressman David Weldon ("Weldon Amendment" or "the Amendment"), covering appropriations for the Departments of Labor, Health and Human Services, and Education, and including the following provision:

> Sec. 507(d)(1). None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage for, or refer for abortions.
>
> (2) In this subsection, the term "health care entity" includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.

On December 8, 2004, President George W. Bush signed the Appropriations Act into law.

---

[2] At a hearing on the motion for a preliminary injunction, counsel indicated their agreement that the resolution of the preliminary injunction and a final determination of plaintiff's challenge on the merits should be consolidated. Accordingly, the court treats the parties' briefs as cross-motions for summary judgment. *See, e.g.*, *Purepac Pharm. Co. v. Thompson*, 238 F. Supp. 2d 191, 192 (D.D.C. 2002); *Ass'n of Flight Attendants, AFL-CIO v. USAir, Inc.*, 807 F. Supp. 827, 829 (D.D.C. 1992).

NFPRHA is a nonprofit membership organization comprised of "virtually all of the domestic family planning field including clinicians, administrators, researchers, educators, advocates and consumers." Compl. ¶ 5. Along with individuals, NFPRHA's membership includes "private nonprofit clinics, State, county, and local health departments, 'umbrella' family planning councils, independent, free-standing family planning clinics, hospital-based clinics, and other family planning organizations and providers." *Id*.

Many of NFPRHA's members administer or provide services using funds provided under Title X of the Public Health Service Act, 42 U.S.C. § 300 ("Title X"). Title X authorizes the Department of Health and Human Services to make grants to public agencies and private nonprofit entities to enable them to provide family planning services. *Id*. § 300(a). While Title X prohibits the use of funds distributed under its authority to pay for abortion services, *see id*. § 300a-6, Title X implementing regulations require that grantees "[o]ffer pregnant women the opportunity to be provided information and counseling regarding each of the following three options: (A) Prenatal care and delivery; (B) Infant care, foster care, or adoption; and (C) Pregnancy termination." 42 C.F.R. § 59.5(a)(5)(i). Title X grantees must certify that they will comply "with all Federal statutes relating to nondiscrimination," as well as "with the [Department of Health and Human Services], [Public Health Service], and [Office of Public Health and Science] terms and conditions of award, if a grant is awarded as a result of [the grantee's] application." Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot."), Ex. 1A at "Assurances"; "Certifications" (Certification No. 4, p. 13).

## II. ANALYSIS

NFPRHA attacks the constitutionality of the Weldon Amendment on several grounds; however, the crux of its challenge is that the Amendment is unconstitutionally vague. NFPRHA claims that the Amendment fails to define either the kinds of entities subject to its conditions or the types of discrimination it precludes so that its members cannot possibly conform their conduct to the standards which the Amendment requires of funding recipients. Lacking this necessary guidance, NFPRHA argues, its members are caught between their pre-existing obligations under the Title X regulations (as well as their ethical obligations to their patients) to provide referrals for abortion services upon request, and their apparent newly-minted obligations under the Weldon Amendment to avoid "discrimination" against health care entities (including, presumably, subgrantees) that refuse to provide referrals for abortion services under any circumstances. NFPRHA asserts that in addition to its facial vagueness, the Weldon Amendment "presents an overwhelming predicament for [its] members, placing them in the midst of a regulatory and statutory crossfire that may ultimately carry sweeping and severe penalties for non-compliance." DeSarno Decl. ¶ 24. In NFPRHA's view, the Weldon Amendment is "simply too ambiguous to place a person of common intelligence on notice of what is expected under the statute, and thus is unconstitutionally vague." Pl.'s Reply at 8; *see also* Compl. ¶ 42. NFPRHA also claims that Weldon is constitutionally flawed because it represents both an improper exercise of Congress' spending power and an impermissible delegation of legislative authority to executive agencies.

Before addressing the merits of NFPRHA's arguments regarding the constitutionality of the Weldon Amendment, the court must address the issue of NFPRHA's standing to bring this suit.

**A.     Standing**

The power of the federal courts to adjudicate grievances is limited to actual cases and controversies. Central to the court's determination of its own jurisdiction is whether the plaintiff has established standing to sue, a showing comprised of three elements — imminent injury, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). While causation and redressability are not at issue in this case, defendants assert that NFPRHA has failed to demonstrate that the Weldon Amendment subjects the organization, or its members, to an actual and concrete injury. Defendants' assertion is without merit.

The party invoking federal jurisdiction retains the burden of showing that it properly has standing. *Id.* at 561 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). To demonstrate an injury sufficient to confer standing, a plaintiff must show an injury to a "legally protected interest" that is both "concrete and particularized," *id*. at 560 (citations omitted), and "actual or imminent" rather than "conjectural or hypothetical," *id*. (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). NFPRHA asserts that its members face the prospect of losing Title X grant monies under the Weldon Amendment, due to the enactment's vagueness and its conflict with the regulatory requirements of Title X itself as well as NFPRHA's members' ethical obligations to their patients. As NFPRHA points out, "[s]uch injury arises even before the Government initiates an enforcement or other action to deny funding to a member . . . . Because the FY 2005

DOL/HHS/DOE appropriations bill is in effect *now*, and any conditions placed on FY 2005 federal funding attach *now*, there is little doubt but that the threat to grant funding is imminent." Pl.'s Reply at 4 (footnote omitted).

Contrary to defendants' suggestion, NFPRHA members do not need to have been denied Title X funds in advance of filing their complaint in order to maintain standing. Rather, courts "recognize an increased risk of *future* injury as sufficient to support standing so long as that risk satisfies the other standing requirements." *Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft*, 339 F. Supp. 2d 68, 75 (D.D.C. 2004).[3]

Providing additional support for its claim to standing, NFPRHA correctly asserts that this circuit has recognized an organization's standing to challenge administrative regulations "because of the potential loss of grants that [the] organization's members may suffer if they violate" those regulations. *Nat'l Family Planning and Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 239 n.9 (D.C. Cir. 1992) ("*NFPRHA I*"). In *NFPRHA I*, the court noted that Title X grantees "had standing to challenge [the] facial validity" of Department of Health and Human Services regulations. *Id*. (discussing *Rust v. Sullivan*, 500 U.S. 173, 181-82 (1991)). The present case is no different merely because NFPRHA now challenges an amendment to a Congressional appropriations bill rather than an agency regulation.[4] In both cases, NFPRHA asserts that its

---

[3]   There can be little doubt that NFPRHA likewise meets the requirements for causation and redressability, completing the standing inquiry. The members' threatened loss of funding is directly attributable to the conditions imposed by the Weldon Amendment, and the court's enjoinment of the Amendment would thus prevent (or at least halt) the injury caused to NFPRHA's members.

[4]   Despite defendants' interpretation that in the prior case NFPRHA merely sought "to enforce a procedural right," Defs.' Post-H'rg Mem. at 4, the court there determined that NFPRHA had standing to sue on behalf of its members on the basis of the potential loss of grants

members are imminently threatened with the loss of a significant revenue stream from federal grants if they fail to comply with the terms that NFPRHA challenges as unconstitutional. Defendants cannot plausibly argue that the Weldon Amendment furthers "Congress's legitimate interest in withholding the benefits of federal financial assistance from agencies, programs, or State and local governments" that fail to comply with Weldon's terms, Defs.' Opp'n at 38, while at the same time maintain that the threat of such "withholding" remains "wholly in the area of speculation and conjecture." *Id*. at 14 (citation and internal quotation marks omitted).[5] When the plaintiff, as NFPRHA's members here, are "an object of the action (or forgone action) at issue . . . there is ordinarily little question" that standing is proper. *Lujan*, 504 U.S. at 561-62. Accordingly, NFPRHA has clearly demonstrated standing to sue on behalf of its members.

**B.     NFPRHA's Challenges to the Weldon Amendment**

Litigants seeking to overturn a statute must overcome the strong presumption that acts of Congress are constitutional. *Bush v. Vera*, 517 U.S. 952, 992 (1996) (citing *Fairbank v. United States*, 181 U.S. 283, 285 (1901)); *see also Turner Broad. Sys., Inc., v. FCC*, 507 U.S. 1301, 1301 (1993); *Nat'l Mar. Union of Am. v. Herzog*, 78 F. Supp. 146, 168 (D.D.C. 1948). A

---

to its members, not because they were seeking to vindicate a procedural, as opposed to a substantive, claim. *See NFPRHA I*, 979 F.2d at 239 n.9.

[5]     Similarly, defendants' argument that "it remains to be seen whether individual Title X clinics are even subject to the Weldon Amendment," Defs.' Opp'n at 13, fails to impair NFPRHA's standing. First, NFPRHA's members include state and local governmental agencies; these members are unquestionably within the ambit of the Weldon Amendment, and the threat of de-funding they face provides representational standing for the entire organization. *See Brady Campaign*, 339 F. Supp. 2d at 73 (citing *Hunt v. Wash. State Apple Advertising Comm'n,* 432 U.S. 333, 342-43 (1977) (internal citation omitted)). Second, as subgrantees, NFPRHA's members who are individual clinics still face the loss of grant money due to Weldon-imposed conditions, even if they are further downstream from the original funding source (federal government agencies).

plaintiff making a facial challenge to the constitutionality of an act of Congress faces a particularly heavy burden, because "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Even if a legislative enactment "might operate unconstitutionally under some conceivable set of circumstances," such a defect "is insufficient to render it wholly invalid, since [the Supreme Court] has not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Id*. (citation omitted). The parties agree that plaintiff here is "essentially challenging only the facial validity of [the Amendment], as opposed to any specific instance of its enforcement." *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 783 F. Supp. 1426, 1429 (D.D.C. 1992). NFPRHA's arguments against the Weldon Amendment fall short of this exacting standard.

**1. Challenge to Congress's Spending Power**

NFPRHA attacks Congress's exercise of its spending power and imposition of accompanying conditions with which funding recipients must comply on two grounds. First, NFPRHA claims, the Weldon Amendment is ambiguous, thereby failing to provide states or other grantees with sufficient guidance to allow them to choose between taking the federal grants (with Weldon's strings attached), or foregoing the funding. Second, NFPRHA asserts that Weldon impermissibly coerces its members into complying with the conditions because they cannot forego Title X funding. Neither argument provides a satisfactory basis for ruling the Weldon Amendment unconstitutional.

Congress may properly make the distribution of federal funds contingent upon certain terms and conditions. "When Congress enacts legislation under its spending power, that

legislation is in the nature of a contract: in return for federal funds," states or other grantees "agree to comply with federally imposed conditions." *Jackson v. Birmingham Bd. of Educ.*, __ U.S. __, 125 S.Ct. 1497, 1509 (2005) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Congress may, among other objectives, use its spending power to advance aims that lie beyond the reach of its direct legislative authority. *See South Dakota v. Dole*, 483 U.S. 203, 207 (1987). The conditions Congress places upon the distribution of federal funding must advance "the general welfare," *id*. (citing *Helvering v. Davis*, 301 U.S. 619, 640-41 (1937), must be "related to the federal interest in particular national projects or programs," *id*. (citing *Massachusetts v. United States*, 435 U.S. 444, 461 (1978) (plurality opinion)), and must not be independently barred by "other constitutional provisions," *id*. (citing *Lawrence County v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256, 269-70 (1985) (other citations omitted)). NFPRHA does not challenge the Weldon Amendment on any of these three grounds.

In addition, though, conditions attached to Congressional spending must allow a potential funding recipient to "ascertain what is expected of it." *Pennhurst*, 451 U.S. at 17. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* And, the Congressionally-mandated conditions may not cross the line into coercion, effectively nullifying the grantee's choice of whether or not to accept the funds and the concomitant conditions. *Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 589-90 (1937).

NFPRHA's argues that Weldon is defective on both of these latter two grounds. First, NFRPHA asserts that its members have no way of knowing what Congress expects of them. The court disagrees. The Weldon Amendment puts current or potential grantees on notice that to receive funding under the 2005 Appropriations Act they may not use the fact that a "health care

9

entity does not provide, pay for, provide coverage of, or refer for abortions," P.L. 104-447, § 508(d)(1), as a basis for treating that health care entity adversely.  While NFPRHA may well be correct that the Weldon Amendment is "ambiguous" in a colloquial sense, the ambiguity that *Pennhurst* warns against has a particular meaning: "[t]he case for inferring intent is at its weakest where, as here, the rights asserted impose *affirmative* obligations on the States to fund certain services," 451 U.S. at 16-17.  Similarly, the Supreme Court has "rejected attempts to infer enforceable rights from Spending Clause statutes," whose language "does not unambiguously confer an enforceable right upon the Act's beneficiaries." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 281 (2002) (*citing Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (other citation omitted)).  The consequence of Congressional ambiguity, then, is not the invalidation of the legislation at issue, but the court's refusal to breathe life into private rights of action on the basis of the legislation.  It is noteworthy that NFPRHA has not identified any case where Congressionally-imposed funding conditions have been found invalid on their face due to alleged ambiguity.

     NFPRHA also claims that the Weldon Amendment imposes an "inherent coercive effect" on the states, "because a State's violation would subject the State to a loss of HHS, DOE, and DOL funds that no State today can do without," Pl.'s Mot. at 23 n.11.  NFPRHA does not elaborate on this comment or provide evidence of how the denial of Title X funding would affect its members (for example, by indicating what portion of various members' operating costs are covered by federal funds, as opposed to funding from other sources).  There is simply insufficient information on the record for the court to conclude that the Weldon Amendment coerces NFPRHA's members to comply with its provisions.

**2. Void for Vagueness Challenge**

In addition to challenging the apparent ambiguity of the Weldon Amendment as a violation of Congress's spending powers, NFPRHA also assails the Weldon Amendment as unconstitutionally vague on other grounds. Specifically, it asserts that Weldon violates NFPRHA members' First Amendment rights, subjects them to criminal and civil sanctions, and possibly conflicts with their pre-existing obligations under the Title X program.

Legislative acts may be struck down on vagueness grounds when they regulate constitutionally protected conduct. *Hill v. Colorado*, 530 U.S. 703, 774 (2000) (citing *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971)); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." (footnote omitted)). NFPRHA argues that its members' First Amendment free speech rights are threatened by the passage, and now the enforcement, of the Weldon Amendment, *see* Landsberger Decl. ¶ 5. This argument fails.

While plaintiff has clearly explained how the Weldon Amendment might threaten its members' provision of medical services, notwithstanding the assertions of its declarants, it is unclear how Weldon's mandate violates the free speech rights of NFPRHA members. Weldon does not, for example, cut off funding from agencies or programs for *permitting* individuals to discuss abortion with their patients or make referrals for such medical services. NFPRHA does not convincingly explain how the Weldon Amendment impinges on constitutionally protected conduct.

The standard for invalidating assertedly vague statutes is much looser when the statutes impose concrete sanctions, especially criminal sanctions. *See Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) ("where a statute imposes criminal penalties, the standard of certainty is higher," leading the Court to "to invalidate a criminal statute on its face even when it could conceivably have had some valid application."); *see also Maxwell v. Rubin*, 3 F. Supp. 2d 45, 49 (D.D.C. 1998) ("The doctrine of vagueness prevents the government from imposing criminal and, to a lesser extent, civil penalties if the statute or regulation specifying the prohibited conduct is not sufficiently specific to provide fair notice and fair enforcement."). NFPRHA asserts that the Weldon Amendment exposes the organization's members to a host of criminal and civil sanctions, including suits under the False Claims Act, False Criminal Claims Act, and False Statements Act. *See* Pl.'s Mot. at 26-27. These consequences depend upon a series of contingencies which may or may not come to pass. In any case they are not mandated by the Weldon Amendment, whose sole "penalty" is the withholding of federal funds from any "Federal agency or program, or . . . State or local government," P.L. 104-447, § 508(d)(1), which fails to abide by its conditions. The court cannot strike down the Weldon Amendment on this basis when it simply "does not provide for any civil or criminal penalties." *Maxwell*, 3 F. Supp. 2d at 49.

In the absence of a showing that a statute threatens constitutionally protected activity or imposes criminal or civil penalties, a plaintiff mounting a facial challenge to an act of Congress must show that "the enactment is impermissibly vague in all of its applications," *Hoffman Estates*, 455 U.S. at 495. Here, for example, NFPRHA points out that the Weldon Amendment fails to make clear whether its individual members are "federal programs" subject to loss of

funding for failure to comply with the Amendment's non-discrimination provision. It is unambiguous, however, that state or local governments (some of which are NFPRHA members) *are* subject to the funding conditions the Weldon Amendment imposes. It is equally evident that institutional "health care entities," as well as individual health care providers, are covered by Weldon's terms. While there are undoubtedly more than a few uncertainties in the statute, NFPRHA has not here met the stringent test for showing that it is "vague in all of its applications." The court, consequently, is unable to strike down the Weldon Amendment on the ground that it is unconstitutionally vague.

**3. Legislative Delegation Challenge**

Finally, NFPRHA asserts that the Weldon Amendment constitutes an impermissible delegation of legislative power to executive agencies. Although "when Congress confers decisionmaking authority upon agencies" it must provide "an intelligible principle" for the agencies to apply in implementing the statute, the Supreme Court has found this "requisite 'intelligible principle' lacking in only two statutes, one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472, 474 (2001) (citing *Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)). The courts have thus "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Id*. at 474-75 (quoting *Mistretta v. United States*, 488 U.S. 361, 416 (1989) (Scalia, J., dissenting)); *see also Humphrey v. Baker*, 848 F.2d 211, 217 (D.C. Cir. 1988), *cert.*

*denied*, 488 U.S. 966 (1988) ("Only the most extravagant delegations of authority, those providing no standards to constrain administrative discretion, have been condemned by the Supreme Court as unconstitutional."). Accordingly, "in order to invalidate a delegation of Congressional power, the party challenging the legislative act must demonstrate that there is an 'absence of standards' to guide executive action so that it would not be possible to ascertain whether the will of Congress has been obeyed." *Nat'l Fed'n of Fed. Employees v. United States*, 727 F. Supp. 17, 23 (D.D.C. 1989) (quoting *Yakus v. United States*, 321 U.S. 414, 426 (1944)).

Here, NFPRHA has not shown that the Weldon Amendment is like one of the very few extraordinary statutes that has been invalidated for improperly delegating legislative authority to the executive branch without providing any intelligible standards to guide the executive in its implementation. The text of the Weldon Amendment itself makes clear that refusal to refer for abortion services is the activity which the Amendment seeks to protect, and likewise makes clear that the mechanism for doing so is the withholding of grant funds from (in Congress's eyes) the offending entities. While implementation and aspects of the interpretation of Weldon are clearly left up to the agencies, the Amendment's central mandate is not — it has already been determined by Congress.

While Weldon may not provide the level of guidance that NFPRHA or its members would prefer, may create a conflict with pre-existing agency regulations, and may impose conditions that NFPRHA members find unacceptable, none of these reasons provides a sufficient basis for the court to invalidate an act of Congress in its entirety. The court has no doubt that the Weldon Amendment "creates serious problems for NFPRHA members at all levels," DeSarno Decl. ¶ 15, and there may well be other occasions for NFPRHA to challenge particular

applications of the Amendment. The court cannot conclude, however, that the Weldon Amendment overreaches Congress's spending powers, exceeds the permissible boundaries of legislative delegation, meets the rigorous void-for-vagueness test, or is otherwise constitutionally infirm on its face.

### III. CONCLUSION

For the foregoing reasons, the court concludes that NFPRHA's motion for a preliminary injunction must be denied and judgment entered for defendants. An appropriate order accompanies this memorandum opinion.

                                              Henry H. Kennedy, Jr.
                                              United States District Judge

Dated: September 28, 2005